UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

| | | |
|---|---|---|
| ANONYMOUS OXFORD HEALTH PLAN MEMBER WITH ID #6023604*01, on behalf of himself and all others similarly situated, | : : : : | Civ. Act. No. 08 CV00942 (PAC) |
| Plaintiff, | : : | |
| -against- | : : | |
| OXFORD HEALTH PLANS (NY), INC., a New York Corporation, UNITED HEALTHCARE SERVICES, INC., a Minnesota Corporation, and UNITED HEALTHCARE, INC., a Delaware Corporation, | : : : : : | DOCUMENT ELECTRONICALLY FILED |
| Defendants. | : | |

---------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## <u>IN OPPOSITION TO MOTION TO DISMISS</u>

Eric B. Fisher, Esq.
MORGENSTERN FISHER & BLUE, LLC
885 Third Avenue
New York, New York 10022
Telephone: (212) 750-6776
Direct Facsimile: (646) 349-2816
Email: efisher@mfbnyc.com

*Attorneys for Plaintiff*

## Table of Contents

Table of Authorities ..................................................................................................... ii

Preliminary Statement ................................................................................................... 1

Summary of Allegations ............................................................................................... 4

Argument ....................................................................................................................... 6

I. PLAINTIFF'S CLAIMS FOR BENEFITS WERE WRONGFULLY DENIED ...................... 6

   A. Defendants Improperly Refer to Matters Outside the Complaint .......................... .6

   B. The Rider Controls and Provides Coverage for Residential, Out-of-Network Treatment for Mental Illness...................................................................................................…...7

   C. The So-Called "Residential Facility Exclusion" Does Not Apply to Plaintiff's Claims .... 13

   D. Ambiguous and Inconsistent Language in an ERISA Plan Should Be Construed Against the Drafters and in Favor of the Insured .................................................................... 15

II. PLAINTIFF HAS STATED VALID CLAIMS FOR COVERAGE AND IS A PROPER PARTY TO BRING THIS ACTION ON BEHALF OF THE CLASS ....................................... 16

III. UHSI AND UHI ARE PROPERLY NAMED AS DEFENDANTS ALONG WITH OXFORD HEALTH  PLANS (NY), INC. BECAUSE ALL ENTITIES ADMINISTERED THE PLAN ............................................................................................................................. 16

Conclusion ................................................................................................................... 18

## Table of Authorities

**CASES**

*AMA v. United Healthcare Corp.*, 00 Civ. 2800 (LMM), 2007 U.S. Dist.
LEXIS 44196 (S.D.N.Y. June 15, 2007) ................................................................... 17

*Bank of America National Trust and Savings Association v. Zanuck*,
766 F.2d 709 (2d. Cir. 1985) .................................................................................... 16

*Bergt v. The Retirement Plan for Pilots Employed by Mark Air, Inc.*
293 F.3d 1139 (9th Cir. 2002) .................................................................................... 8

*Cossey v. Associates' Health and Welfare Plan*, 4:02 CV 661 (WKU),
2005 U.S. Dist LEXIS 31943 (E.D. A.R. Nov. 21, 2005) ......................................... 8

*Critchlow v. First Unum Life Insurance Company of America*,
378 F.3d 246 (2d Cir. 2004) ..................................................................................... 15

*DeSouza v. Plusfunds Group, Inc.*, 05 Civ. 5990 (JCF), 2007
U.S. Dist. LEXIS 89704 (S.D.N.Y. Dec. 7, 2007) .................................................. 14

*Enercomp, Inc. v. McCorhill Publishing, Inc.*, 873 F.2d 536
(2d Cir. 1989)........................................................................................................... 12

*Excess Insurance Co., Ltd. v. Odyssey American Reinsurance Co.*,
2007 U.S. Dist. LEXIS 88441 (S.D.N.Y.)............................................................... 17

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006)...................................................... 6-7

*Francis v. INA Life Insurance Co. of N.Y.*, 809 F.2d 183 (2d Cir. 1987)...................... 9

*Gibbs v. Cigna Corp.*, 440 F.3d 571 (2d Cir. 2006) ................................................ 15

*Glocker v. W.R. Grace & Co.*, 974 F.2d 540 (4th Cir. 1992) .................................... 10

*Heyman v. Commerce And Industry Insurance Co.*, 524 F.2d 1317
(2d Cir. 1975)........................................................................................................... 16

*I.V. Services of America, Inc., v. Trustees of the American Consulting
Engineers Council Insurance Trust Fund*, 136 F.3d 114 (2d Cir. 1998)................... 15

*Interdigital Communications Corp v. Nokia Corp.*, 407 F. Supp. 2d 522
(S.D.N.Y. 2005)........................................................................................................ 12

*Kinek v. Paramount Communications, Inc.*, 22 F.3d 503 (2d. Cir. 1994) .................................. 12

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ........................................................ 6

*Leepson v. The Allan Riley Company, Inc.*, 04 Civ. 3720 (LTS), 2006
U.S. Dist. LEXIS 52875 (S.D.N.Y. July 31, 2006) ...................................................... 7

*Lucente v. International Business Machines Corp.*, 310 F.3d 243
(2d Cir. 2002) ...................................................................................................... 16

*Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98
(2d Cir. 1991) ...................................................................................................... 15

*Newmont Mines Limited v. Hanover Insurance Co.*, 784 F.2d 127
(2d. Cir. 1986) ...................................................................................................... 14

*Paulson v. The Paul Revere Life Insurance Co.*, 323 F. Supp. 2d 919
(S.D. Iowa 2004) .................................................................................................. 10

*Perreca v. Gluck*, 295 F.3d 215 (2d Cir. 2002) .................................................................. 12, 15

*Schultz v. Stoner*, 308 F. Supp. 2d 289 (S.D.N.Y. 2004) ...................................................... 8-9

*State Farm Mutual Auto Insurance Co. v. CPT Medical Services, PC*,
246 F.R.D. 143, 149; 04 Cv. 5045 (ILG), 2007 U.S. Dist. LEXIS
74494 (E.D.N.Y. Oct. 5, 2007) ............................................................................ 17

*Stern v. Cigna Group Insurance*, 06 Civ. 1400 (JSR), 2007 U.S. Dist.
LEXIS 9153 (S.D.N.Y. Jan. 30, 2007) ...................................................... 2, 8-9

*Sturges v. Hy-Vee Employee Benefit Plan and Trust*, 991 F.2d 479
(8th Cir. 1993) .................................................................................................... 10

*Sykes v. James*, 13 F.3d 515 (2d Cir. 1993) .................................................................... 4

*Teachers Insurance and Annuity Assoc. of America v. Criimi
Mare Services Limited Partnership*, 06 Civ. 0392 (KNF), 2007
U.S. Dist. LEXIS 28279 (S.D.N.Y. March 20, 2007) ............................................ 16

*Terwilliger v. Terwilliger*, 206 F.3d 240 (2d Cir. 2000) ............................................ 9

## Preliminary Statement

Plaintiff Anonymous Oxford Health Plan Member with ID #6023604*01 ("Plaintiff"), by his attorneys Morgenstern Fisher & Blue, LLC, respectfully submits this memorandum of law in opposition to the motion to dismiss filed by defendants Oxford Health Plans (NY), Inc., United Healthcare Services, Inc., and United Healthcare, Inc. ("Defendants"). For the reasons set forth herein, the motion should be denied.

This is a private enforcement action authorized under the Employee Retirement Income Security Act ("ERISA") arising out of Defendants' wrongful denial of benefits to Plaintiff's daughter, Jane Doe (the "Patient"). The Patient is a covered beneficiary under Plaintiff's health plan issued by Defendants (the "Plan"). The Patient suffered from mental illness, including depression and life-threatening eating disorders. The Defendants wrongfully denied benefits to Patient for medically-necessary, life-saving care at residential treatment facilities, despite clear language in the Plan granting coverage for such treatments.

The arguments advanced by Defendants in support of their motion to dismiss are an attempt to divert this Court's attention from the plain language of the Plan which provides coverage for the claimed life-saving treatment. All of Defendants' arguments are based on an untenable reading of the Plan that cannot be squared with basic principles of ERISA law or contract interpretation. Stated simply, the issue in this case is whether the Plan extends coverage to inpatient treatment for mental illness at out-of-network facilities. Plainly, it does.

The Plan includes a mental health rider (the "Rider"). The Rider modifies the certificate (the "Certificate") that governs the scope of out-of-network benefits. According to

1

the Rider, "Inpatient and Equivalent Care for the treatment of mental and nervous disorders" is covered, provided that the care is administered at a licensed facility. "Equivalent Care" expressly includes care administered in a setting "other than [a] hospital." Thus, inpatient treatment for mental disorders in non-hospital facilities, like those at issue in this case, is covered under the terms of the Rider.

To evade the clear implications of the Rider, Defendants point to language in the Plan's Summary of Benefits (the "Summary") that is inconsistent with the Rider. According to the Summary, mental health services are "covered in-network only." This statement in the Summary is at odds with the Rider, which extends benefits for out-of-network mental health services. Stripped to its core, Defendants' argument is simply that the Summary should trump the Rider. Defendants are wrong for at least the following reasons:

First, as a matter of ERISA law, Defendants cannot use inconsistent or narrow language in a Summary to defeat coverage provided by the formal provisions contained in the Plan. *See, e.g., Stern v. Cigna Group Insurance*, 06 Civ. 1400 (JSR), 2007 U.S. Dist. LEXIS 9153, *11 (S.D.N.Y. Jan. 30, 2007). In the Summary, Defendants were legally required to accurately summarize the scope of benefits in plain English. They failed to so; instead, they promulgated a Summary that is at odds with the coverage provided by the Rider. As a matter of law, they cannot now capitalize on this inconsistency to deny coverage. In particular, this approach violates the well-established principle that all such inconsistencies be interpreted to favor the insured.

Second, the Summary relied on by Defendants in their motion to dismiss explicitly states that it does not control. The Summary states: "IMPORTANT: This document is not a contract...Please read your HMO Certificate and your Supplemental Certificate for a full

description of your…conditions of coverage." Thus, the Summary itself refers the insured to the Certificate – in this case, as modified by the Rider – for a full, accurate description of the scope of coverage.

Third, the Rider expressly states that it controls in the event of any conflict with other Plan provisions: "**In the event of a conflict between the provisions of this Rider and the Certificate, the provisions of this Rider will prevail.**" Defendants' motion attempts to upend this clear instruction in Defendants' own Plan.

Fourth, Defendants' reading, which improperly gives primacy to inconsistent and narrow terms contained in the Summary, violates basic canons of contract interpretation. Defendants' reading renders meaningless the Rider's unambiguous extension of mental health coverage.

In sum, for the reasons summarized above and as set forth in more detail herein, Defendants' reading of the Plan is indefensible. Defendants' results-oriented reading utterly disregards the specific terms of the Rider in a fatally-flawed attempt to defend their wrongful denial of coverage to Plaintiff.

Finally, despite Defendants' claims to the contrary, United Healthcare Services, Inc. ("UHSI") and United Healthcare, Inc. ("UHI") are proper party Defendants along with Oxford Health Plans (NY), Inc. since all three entities administered the Plan and made decisions relating to the denial of coverage. This fact has been pled, and discovery will demonstrate that UHSI and UHI actively participated in decision-making regarding the benefits at issue in this case. In any event, the full extent of the involvement of UHSI and UHI raises a host of fact issues that cannot appropriately be resolved on a motion to dismiss and will require fact discovery.

### Summary of Allegations

This action concerns Defendants' wrongful denial of mental health benefits to Plaintiff's daughter, a covered beneficiary under a group employee health benefits plan known as the Oxford Freedom Plan (the "Plan"). *Id.* at ¶ 11.[1] The basic out-of-network Plan Certificate contained an exclusion regarding certain mental health services provided on an inpatient basis. *Id.* at ¶ 25. In 2003, the Plan Certificate was amended by the Rider. *Id.* at ¶ 23. The Rider modifies the out-of-network benefits Certificate and states plainly that "*the exclusion regarding mental health services is removed from the Certificate*." *Id.* at ¶¶ 25, 27. The Rider extends coverage for mental health treatment and care to include "Inpatient and Equivalent Care." *Id.* at ¶¶ 27-28. In relevant part, the Rider states:

> We Cover Inpatient and Equivalent Care for the treatment of mental and nervous disorders. We define "Inpatient Care" to mean treatment provided in a hospital as defined below. *"Equivalent Care" is provided in a setting, other than such hospital, that We and the Provider deem to be safe and medically appropriate*…Inpatient and Equivalent Care mental health services are Covered only when obtained from facilities licensed by the appropriate state regulatory authority as well as any other Provider We deem appropriate to provide the Medically Necessary level of care.

Rider (1)(1)(a) (emphasis added).[2] Thus, "Equivalent Care," as defined in the Rider, clearly includes both inpatient and residential treatments for mental illness at facilities that are not hospitals. *Id.* at ¶ 32.

---

[1] For purposes of this motion, the truth of the allegations in the Complaint should be assumed. *See, e.g.*, *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

[2] A copy of the Rider is attached as Exhibit A to the Complaint. For the Court's convenience, a courtesy copy of the Complaint is attached to the appendix hereto.

The Rider also states that "[a]ll covered Services under this Rider are subject to UCR, Deductible and the Coinsurance shown in your Summary of Benefits." *Id.* at ¶ 29. UCR refers to the "usual, customary and reasonable" rates for services and procedures. *Id.* UCR is, in fact, the standard reimbursement rate that applies to care providers that are **outside** of the Defendants' network. *Id.* Accordingly, it is clear that the Rider's provision of coverage for "Equivalent Care" applies to circumstances where the treatment facility is out of the Oxford Network.

Plaintiff's daughter, a covered beneficiary under the Plan, suffered from mental illness, including depression and life-threatening eating disorders. *Id.* at ¶ 22. In May and June of 2004, she received medically-necessary, life-saving treatment at the Renfrew Center in Pennsylvania. *Id.* at ¶ 49. Again, in July and August of 2006, she received medically-necessary, life-saving treatment at the Klarman Center at McLean Hospital in Massachusetts. *Id.* at ¶ 33. Both of these Centers provide residential care and are outside Defendants' network of providers. *Id.* at ¶¶ 33-34, 49.

Before, during and after Plaintiff's daughter was treated at both the Renfrew and Klarman Centers, Plaintiff sought to secure benefits for said treatment under the Rider. *Id.* at ¶¶ 35, 50. In both instances, Defendants denied Plaintiff's claims for coverage despite the plain language in the Rider granting coverage for inpatient, out-of-network treatment. *Id.* at ¶¶ 36-51.

Plaintiff appealed these denials of benefits and has exhausted all available administrative remedies. *Id.* at ¶ 11. The grounds provided by Defendants for their denials shifted over time, and were inconsistent with both the prior denials and the terms of the Plan. *Id.* at ¶¶ 36-48.

For example, Plaintiff's claims for the treatments were originally denied on the grounds that "Resident[i]al mental health is not a covered benefit." *Id*. at ¶ 36. This denial altogether ignores the language in the Rider which provides coverage for mental health care in settings other than hospitals. When Plaintiff appealed this decision, the claim was again denied but the new ground was that "inpatient mental health coverage is only available from in-network providers." *Id.* at ¶ 42. This denial is inconsistent with the ground for Defendants' initial decision and again ignores the plain language of the Rider which clearly provides for out-of-network care.

Based on the above facts, Plaintiff has stated a claim for a violation of ERISA § 502(a)(1)(B) and seeks (i) damages for wrongful denial of benefits; (ii) a declaration that the scope of the Rider includes inpatient, out-of-network residential care for mental illness; (iii) an order enjoining Defendants from future denials of claims properly brought under the Rider; (iv) a declaration that Defendants must provide an accurate Summary that fully explains the scope of mental health benefits; and (v) attorneys' fees.

## ARGUMENT

## I. Plaintiff's Claims for Benefits Were Wrongfully Denied

### A. Defendants Improperly Refer to Matters Outside the Complaint

On a motion to dismiss under Rule 12(b)(6), the Court's consideration is limited to the complaint and documents attached thereto or incorporated by reference. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself"); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts

stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference"); *Leepson, P.C. v. The Allan Riley Company, Inc.*, 04 Civ. 3720 (LTS), 2006 U.S. Dist. LEXIS 52875, *7-*8 (S.D.N.Y. July 31, 2006) ("evidentiary material outside the complaint is not appropriately considered at this stage of the proceeding"). Before the Court may consider materials outside the complaint, even those that may be "integral" to the complaint itself, "it must be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, at 134.

In support of their motion to dismiss, Defendants have submitted an affidavit, contending that the Plan was amended yet again in 2006, and that the Rider described in the Complaint was replaced with a different rider. Discovery will show that Plaintiff was never notified of any such change to the Plan and will further demonstrate that, throughout the claims process, Defendants made reference to the 2003 Rider only. Accordingly, there are disputed facts concerning the question of which rider was in effect in 2006, and the Court should therefore not consider the affidavit and supplemental documents attached to the affidavit of Rodney Lippold. Instead, for purposes of deciding this motion to dismiss this Court should restrict its analysis to the Complaint and the Rider attached thereto. *Faulkner*, *supra*. Finally, there is no dispute that the Rider attached to the Complaint was in effect when treatment was provided in 2004 at the Renfrew Center.

**B.  The Rider Controls And Provides Coverage for Residential, Out-of-Network Treatment for Mental Illness**

The Rider modifies the out-of-network benefits Certificate to include residential, out-of-network, mental health treatment. As a matter of ERISA law and straightforward contract interpretation, this Rider controls the terms of Plaintiff's coverage-not the Summary which contains inconsistent and conflicting language. Moreover, as a matter of contract

interpretation, to the extent there are conflicts between the Rider and the Summary, primacy must be granted to the Rider.

As a matter of ERISA law, Defendants cannot use the Summary to limit the scope of Plaintiff's coverage. "[N]o Second Circuit case 'holds that a plan or fiduciary can invoke narrow or inconsistent [Summary Plan Description] language to preclude participants from exercising rights granted by formal plan texts.'" *Stern v. Cigna Group Insurance*, 06 Civ. 1400 (JSR), 2007 U.S. Dist. LEXIS 9153, *11 (S.D.N.Y. Jan. 30, 2007) (*quoting Schultz v. Stoner*, 308 F. Supp. 2d 289, 307 (S.D.N.Y 2004)). "To hold categorically that a [summary of benefits] which may well narrow the plan's original participation provisions supersedes the original plan text to the extent there is a conflict would be to permit plan sponsors and fiduciaries to escape obligations undertaken in duly adopted plans by the simple expedient of disseminating more restrictive [summaries of benefits]. Such a result would be entirely inconsistent with ERISA's requirements that [Summaries of Benefits] be accurate…" *Schultz v. Stoner*, 308 F. Supp. 2d 289, 307 (S.D.N.Y. 2004). "[W]hen the plan master document is more favorable to the employee than the [summary of benefits], and unambiguously allows for eligibility of an employee, it controls, despite contrary unambiguous provisions in the [summary of benefits]." *Bergt v. The Retirement Plan for Pilots Employed by Mark Air, Inc.* 293 F.3d 1139, 1145 (9th Cir. 2002). "Just as the rule allowing enforcement of [Summaries of Benefits] helps to ensure that policy summaries are 'sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan,' so does a rule requiring that favorable policy terms be enforced over more restrictive terms in [the Summary]." *Cossey v. Associates' Health and Welfare Plan*, 4:02 CV 661 (WKU), 2005 U.S. Dist LEXIS 31943, *19 (E.D. Ark. Nov. 21, 2005).

In this case, the Rider included in the out-of-network benefits Certificate plainly grants coverage for inpatient, out-of-network mental health services. The Summary, which is supposed to summarize the salient features of the Plan, is flat out inconsistent with the grant of coverage spelled out by the Rider. Defendants wrongfully seek to use that inconsistency to limit the coverage granted by the controlling Rider. This is improper.

This is not a novel issue. Courts in this Circuit have previously addressed circumstances where a Summary is narrower than, and thus inconsistent with, the Plan itself. The result is always the same: where the Plan documents provide broader coverage than the Summary, courts consistently apply the broader terms of the Plan for the benefit of the insured. For example, in *Stern v. Cigna Group Insurance*, 06 Civ. 1400 (JSR), 2007 U.S. Dist. LEXIS 9153 (S.D.N.Y. Jan. 30, 2007), the defendant insurance company attempted to limit coverage plainly provided by the plan through use of a more restrictive Summary. *Id.* The Court found that although Second Circuit authority allowed Summaries to trump plan language to broaden coverage when relied upon by the insured, it did not allow insurance companies to limit plan language through "narrow or inconsistent" Summaries. *Id.* at *11-*12. Similarly, in *Schultz v. Stoner*, 308 F. Supp. 2d 289 (S.D.N.Y. 2004), the Court found that a summary could not be used as a "sword rather than a shield" to restrict more generous plan language and reference to the "formal plan texts" should be made to determine coverage. *Id.* at 307-308. These cases make clear that Defendants' attempts to convert an inconsistent and misleading Summary into a sword wielded to destroy coverage to which Plaintiff is entitled are wrong.[3]

---

[3] Defendants cite *Francis v. INA Life Insurance Co. of N.Y.*, 809 F.2d 183, 185 (2d Cir. 1987) and *Terwilliger v. Terwilliger*, 206 F.3d 240 (2d Cir. 2000) for the proposition that clear and unambiguous terms should be enforced as written. Neither case has any application here as neither addresses the interplay between a Summary and a

Furthermore, as a matter of straightforward contract interpretation, the Rider itself makes clear that it controls over any inconsistent or conflicting language elsewhere in the Plan. The Rider states:

> "In the event of a conflict between the provisions of this Rider and the Certificate, the provisions of this Rider will prevail."

Likewise, by its own terms, the Summary is <u>not</u> to be given a controlling interpretation. It states:

> "IMPORTANT: This document is not a contract. It is only a summary of your coverage under the Freedom Plan. Please read your HMO Certificate and your Supplemental Certificate for a full description of your Covered Services, exclusions and other terms and conditions of coverage."

Courts have consistently given effect to such provisions for the benefit of the insured. For example, in *Sturges v. Hy-Vee Employee Benefit Plan and Trust*, 991 F.2d 479, 480 (8th Cir. 1993), when language was present similar to the above, the court found that the Rider would control over the inconsistent Summary, stating, "although the plan summary was at odds with the plan, the summary stated that the plan controlled when the summary and plan conflicted...." Similarly in *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 542 (4th Cir. 1992), the Court held "where the [Summary] favors the employer, the employer cannot disavow a disclaimer in the [Summary] representing that the Plan controls." *See also Paulson v. The Paul Revere Life Insurance Co.*, 323 F. Supp. 2d 919, 939 (S.D. Iowa 2004).

As yet further evidence that the Rider was intended to expand coverage to include inpatient, out-of-network mental health services, the Rider reads:

---

Rider, and both cases involve unambiguous language. Here, the language of the Summary is in obvious conflict with the Rider.

"[a]ll covered Services under this Rider are subject to UCR, Deductible and the Coinsurance shown in your Summary of Benefits."

The Acronym "UCR" refers to "usual, customary and reasonable" rates for services and procedures.   UCR is the standard reimbursement rate that applies to care providers that are **outside** of the Defendants' network.

To avoid the obvious results of the Rider language they drafted, Defendants argue implausibly that the Summary contains language negating all the mental health coverage extended by the Rider.  Defendants posit that the Rider, although concededly included in the 2003 out-of-network benefits Certificate and expressly providing for "Inpatient and Equivalent Care" should be ignored because it is limited by Rider language that such coverage is only "*up to the amount of days shown in your Summary of Benefits.*" Defendants then refer the Court to the Summary which reads that inpatient mental health services are "COVERED IN-NETWORK ONLY."  Defendants conclude therefore that no inpatient, out-of-network coverage was ever intended by the Rider that they themselves included as part of the Plan.

Defendants' argument renders the Rider a nullity.  It makes no sense to include a Rider providing out-of-network mental health benefits only to negate all of that coverage in the Summary.  Defendants completely ignore language expressly providing that the Rider controls over any inconsistency and read the Rider out of the Plan entirely with an interpretation that relies solely on the Summary.  This indefensible reading of the Plan is an ex post facto contortion intended to rationalize Defendants' capricious denial of mental health benefits to Plaintiff.

Defendants' reading of the Plan is in direct contravention of well-established principles of contract interpretation. "[It is a] cardinal principle of contract construction[] that a document should be read to give effect to all its provisions and to render them consistent with each other." *Perreca v. Gluck*, 295 F.3d 215, 224 (2d Cir. 2002) (*quoting Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)); *Kinek v. Paramount Communications, Inc.,* 22 F.3d 503, 509 (2d. Cir. 1994) (the "well established principles of contract construction, which require that all provisions of a contract be read together as a harmonious whole, if possible"); *Enercomp, Inc. v. McCorhill Publishing, Inc.*, 873 F.2d 536, 549 (2d Cir. 1989) ("[A] contract should not be interpreted so as to leave any clause expressly included by the parties without effect or purpose, neither should a clause be interpreted in such a way as to make it absurd"); *Interdigital Communications Corp v. Nokia Corp.,* 407 F. Supp. 2d 522, 530 (S.D.N.Y. 2005) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties"). Defendants' strained construction leads to exactly the sort of absurd result that New York Courts strive to avoid when interpreting contract language because it deprives the Rider of any coherent meaning.[4]

In contrast to Defendants' incoherent analysis, Plaintiff's interpretation is straightforward. Simply put, the Rider is what it says it is by its own terms and plain language. It removes the Certificate's mental health exclusion and extends coverage for inpatient, out-of-network mental health care. This is the only reasonable reading of the

---

[4] This is not the first time the Defendants have struggled to interpret the Plan language they now claim to be clear and unambiguous. As evidence of this, Defendants initially denied Plaintiff's 2006 claims because they read the Plan to exclude residential treatment, thereby ignoring the language in the Rider. On appeal, the new ground for denial was that residential treatment is offered, but only in-network, again ignoring the Rider which amended the out-of-network Certificate.

Rider, which was included as part of the out-of-network benefits Certificate and references UCR rates that apply only to out-of-network care.  The Summary, however, is inconsistent with the Rider and should have been revised by the Defendants to reflect the updated and expanded scope of coverage intended by the controlling Rider.  Defendants' failure to so revise the Summary renders it materially misleading.

For the reasons set out above, it is clear that the Rider is the critical and controlling document in this case and grants coverage for inpatient, out-of-network mental health services.  Defendants' contentions to the contrary cannot be harmonized with the plain language of the Plan.

## C. The So-Called "Residential Facility Exclusion" Does Not Apply to Plaintiff's Claims

In their memorandum of law, Defendants repeatedly refer to a clause in the Plan misleadingly labeled the "Residential Facility Exclusion" as supposed proof that Plaintiff's daughter is not entitled to coverage for her stays at the Klarman and Renfrew Centers. Defendants' reliance on this clause is misplaced.  This so-called exclusion in no way applies to the facts at issue here, and even a cursory reading of the relevant language makes this obvious.  The clause that Defendants style as the "Residential Facility Exclusion" reads as follows:

> "Mental Health Services.  Please check your Summary of Benefits to see if your coverage of these services has been added through a rider"

> "Non-medical services and long-term rehabilitation services for physical therapy or the treatment of alcoholism or drug abuse, including rehabilitation services in a specialized inpatient or residential facility, except as specifically Covered under this Certificate."

By the plain language of this clause, it applies only to instances where "*non-medical services*" and "*long-term rehabilitation services*" are provided.   Plaintiff respectfully submits that the treatment Plaintiff's daughter received at both the Klarman and Renfrew Centers was medical in nature rather than "*non-medical.*"   Specifically, Plaintiff's daughter was provided medically-necessary, life-saving care and treatment at both of these Centers for depression and serious eating disorders.   Further, by the terms of this clause, the limitations on "*non-medical*" and "*long-term rehabilitation services*" specifically relate to treatment for "*alcoholism or drug abuse.*"   The claims at issue in this case, however, have nothing to do with alcoholism or drug abuse.[5]

The language that actually controls here is that contained within the Rider that extends coverage to:

> Inpatient or Equivalent Care for the treatment of mental or nervous disorders.  We define "Inpatient Care" to mean treatment provided in hospital as defined below.   **"Equivalent Care" is provided in a setting, other than such hospital**, that We and the Provider deem to be safe and medically appropriate." (emphasis added).

"Equivalent Care" is defined as any care provided in a licensed non-hospital setting.   This, of course, would include care provided in residential treatment facilities.   Again, it is clear that Defendants' interpretation of the Plan language fails to give the words the plain and ordinary meanings ascribed to them and ignores the basic rules of contract construction. *Newmont Mines Limited v. Hanover Insurance Co.,* 784 F.2d 127, 135 (2d. Cir. 1986) ("words should be given the meaning ordinarily ascribed to them and absurd results should be avoided"); *DeSouza v. Plusfunds Group, Inc.,* 05 Civ. 5990 (JCF), 2007 U.S. Dist. LEXIS

---

[5] Defendants argue incorrectly that, because the Rider did not reference residential facilities, the so-called "Residential Facility Exclusion" was still in effect.  As set forth above, this argument is without merit since this so-called exclusion only applies to non-medical treatments related to drug or alcohol abuse.

89704, *8 (S.D.N.Y. Dec. 7, 2007) ("contracts must be interpreted to avoid such absurd results").

### D. Ambiguous and Inconsistent Language in an ERISA Plan Should Be Construed Against the Drafters and in Favor of the Insured

Plaintiff's reliance on the Rider and the plain language granting coverage for inpatient, out-of-network care was reasonable, and Defendants should be required to honor the terms of the Rider. The law in the Second Circuit is clear that it is Defendants' burden to draft clear, consistent policy language. Any inconsistencies or conflicts in the Plan must be construed against Defendants. *Gibbs v. Cigna Corp.*, 440 F.3d 571, 576-77 (2d Cir. 2006) ("ambiguity in a plan should be construed against the interests of the party that drafted the language") (internal quotation marks omitted); *Critchlow v. First Unum Life Insurance Company of America*, 378 F.3d 246, 256 (2d Cir. 2004) ("If there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer"); *Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002) ("any ambiguity in the language used in an ERISA plan should be construed against the interests of the party that drafted the language"); *I.V. Services of America, Inc., v. Trustees of the American Consulting Engineers Council Insurance Trust Fund*, 136 F.3d 114, 121-122 (2d Cir. 1998) ("[plaintiff] should be able to claim that any contract ambiguities are to be interpreted against appellees who wrote the contract"); *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991) ("ambiguities in an insurance policy are to be construed against the insurer...."); *Springs Valley Bank and Trust Co. v. Carpenter*, 885 F. Supp. 1131, 1142 (S.D. Ind. 1993) ("when terms of [a Summary] and policy conflict, the terms which favor the participant will govern, regardless of disclaimers (read or unread)...."). Because the

language in the Rider is in conflict with the Summary, any inconsistency should be construed against Defendants.

Likewise, because the Plan's language is inconsistent and in conflict, this presents triable issues of fact that are wholly inappropriate for resolution by a motion to dismiss. *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 257 (2d Cir. 2002) (denying summary judgment due to contract ambiguity); *Bank of America National Trust and Savings Association v. Zanuck*, 766 F.2d 709, 715 (2d. Cir. 1985) (denying summary judgment on ambiguous contract because it created triable issues of fact); *Heyman v. Commerce And Industry Insurance Co.*, 524 F.2d 1317, 1319 (2d Cir. 1975) (denying summary judgment on ambiguous contract); *Teachers Insurance and Annuity Assoc. of America v. Criimi Mare Services Limited Partnership*, 06 Civ. 0392 (KNF), 2007 U.S. Dist. LEXIS 28279, *18 (S.D.N.Y. March 20, 2007) (denying motion to dismiss on ambiguous contract). Therefore, Defendants' motion should be denied.

## II.  **Plaintiff Has Stated Valid Claims for Coverage and is a Proper Party to Bring This Action on Behalf of the Class**

Defendants argue that, because Plaintiff allegedly has failed to state a claim, he cannot serve as a lead plaintiff in this putative class action. As already set forth at length above, Plaintiff has stated valid claims based on Defendants' wrongful denials of coverage under the Plan. Accordingly, Plaintiff should be permitted to continue to pursue this claim on behalf of the putative class.

## III.  **UHSI and UHI Are Properly Named as Defendants Along With Oxford Health Plans (NY), Inc. Because all Entities Administered the Plan**

Despite Defendants' objections to the inclusion of UHSI and UHI in this action, both are proper parties as both UHSI and UHI, as well as Oxford Health Plans (NY), Inc., were

involved in administering the Plan and in denying Plaintiff's benefits.   Importantly, the full

extent of the involvement of UHSI and UHI in administering the Plan is an issue of fact that

will require discovery and therefore is not an issue appropriately resolved at this stage of the

proceeding.   Instructive is *AMA v. United Healthcare Corp.*, 00 Civ. 2800 (LMM), 2007

U.S. Dist. LEXIS 44196, *5-*6 (S.D.N.Y. June 15, 2007), where the court, when faced with

similar assertions by defendant insurers, denied motions to dismiss and allowed limited

discovery aimed at determining the proper parties to the ERISA action.   Similarly, in *Excess*

*Insurance Co., Ltd. v. Odyssey American Reinsurance Co.*, 05 Civ. 10884 (NRB), 2007 U.S.

Dist. LEXIS 88441, *2 (S.D.N.Y. Nov. 28, 2007), the court allowed limited discovery to

determine whether a defendant insurance company was the proper party to the suit.   *See also*

*State Farm Mutual Auto Insurance Co. v. CPT Medical Services, PC*, 246 F.R.D. 143, 149;

04 Cv. 5045 (ILG), 2007 U.S. Dist. LEXIS 74494, *13 (E.D.N.Y. Oct. 5, 2007) (limited

discovery allowed to determine the proper parties).

　　　UHSI and UHI are proper party defendants.   Discovery will show that their

fingerprints are on the coverage denial at issue.   In any event, because the extent of their

involvement in the Plan raises issues of fact that require discovery and are not appropriately

resolved at this stage of the proceeding, Defendants' motion should be denied.

## **Conclusion**

For the reasons set forth above, Defendants' motion should be denied, and this Court should grant such other and further relief as it deems just and proper.

Dated: New York, New York
      May 12, 2008

MORGENSTERN FISHER & BLUE, LLC

/s/ Eric B. Fisher
Eric B. Fisher
885 Third Avenue
New York, New York 10022
Telephone: 212-750-6776
Facsimile: 646.349.2816
Email: efisher@mfbnyc.com

*Attorneys for Plaintiff*

Appendix

Peter D. Morgenstern, Esq.
Eric B. Fisher, Esq.
MORGENSTERN FISHER & BLUE, LLC
885 Third Avenue
New York, New York 10022
Telephone:  212.750.6776
Facsimile:  646.349.2816
Email:  efisher@mfbnyc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| ANONYMOUS OXFORD HEALTH<br>PLAN MEMBER WITH ID #6023604*01,<br>on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>OXFORD HEALTH PLANS (NY), INC., a New York<br>Corporation, UNITED HEALTHCARE SERVICES,<br>INC., a Minnesota Corporation, and UNITED<br>HEALTHCARE, INC., a Delaware Corporation,<br><br>Defendants. | Case No._____<br><br><br><br><br>**SUMMONS IN A<br>CIVIL CASE** |

------------------------------------------------------------------x

TO:    Oxford Health Plans (NY), Inc.
       c/o CT Corporation System
       111 Eighth Avenue
       New York, New York 10011

       United Healthcare Services, Inc.
       c/o CT Corporation System
       111 Eighth Avenue
       New York, New York 10011

       United Healthcare, Inc
       c/o CT Corporation System
       111 Eighth Avenue
       New York, New York 10011

   **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's Attorney,
Eric B. Fisher, Esq., Morgenstern Fisher & Blue, LLC, 885 Third Avenue, New York, New York
10022, an answer to the complaint which is herewith served upon you, within 20 days after

service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.


**J. MICHAEL McMAHON**
_____
Clerk

_____
(By) Deputy Clerk

JAN 2 9 2008
_____
Date

JUDGE CROTTY



Peter D. Morgenstern, Esq.
Eric B. Fisher, Esq.
MORGENSTERN FISHER & BLUE, LLC
885 Third Avenue
New York, New York 10022
Telephone: 212.750.6776
Facsimile: 646.349.2816
Email: efisher@mfbnyc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ANONYMOUS OXFORD HEALTH                    :
PLAN MEMBER WITH ID #6023604*01,           :
on behalf of himself and all others similarly situated,   :
                                           :
                                           :
                Plaintiff,                 :           **CLASS ACTION**
                                           :           **COMPLAINT**
            -against-                      :
                                           :
OXFORD HEALTH PLANS (NY), INC., a New York :           **Jury Trial Demanded**
Corporation, UNITED HEALTHCARE SERVICES,   :
INC., a Minnesota Corporation, and UNITED  :
HEALTHCARE, INC., a Delaware Corporation,  :
                                           :
                Defendants.                :

------------------------------------------------------------x

     Plaintiff Anonymous Oxford Health Plan Member With ID #6023604*01 (the

"Plaintiff"),[1] on behalf of himself and all others similarly situated, by and through his

attorneys, Morgenstern Fisher & Blue, LLC, as and for their Class Action Complaint

against defendants Oxford Health Plans (NY), Inc. ("Oxford"), United HealthCare

Services, Inc. ("UHSI"), and United HealthCare, Inc. ("United") (collectively, the

"Defendants"), alleges as follows:

---

[1]     The Plaintiff is not identified by name in the Complaint to protect the privacy of the Patient's (defined below) medical information. As alleged below, the Patient is the Plaintiff's daughter.

## SUMMARY OF THE ACTION

1.    This is a private enforcement action authorized under the Employee Retirement Income Security Act ("ERISA") for wrongful denial of mental health benefits. Jane Doe (the "Patient") is Plaintiff's child and a covered beneficiary under Plaintiff's health plan issued by Oxford, which includes the Mental Health Rider (described in detail hereafter). The Patient suffered from mental illness, including life-threatening eating disorders. The Defendants denied benefits to Patient for medically-necessary, life-saving care at residential treatment facilities specializing in the care and treatment of patients with eating disorders. The Defendants' denial of benefits is riddled with inconsistencies and fails to apply the clear, unambiguous terms of the Mental Health Rider annexed to Plaintiff's health plan policy, which plainly provides coverage for the care and treatment at issue.

2.    Plaintiff, who is the Patient's father and is responsible for all of the Patient's medical expenses, brings this action on his behalf and on behalf of other similarly-situated beneficiaries of Oxford health plans with the Mental Health Rider, who were wrongfully denied benefits for hospitalization or "equivalent care" for mental illness.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action arises under Section 502 of ERISA, which is codified at 29 U.S.C. § 1132 ("Section 502").

4.    Venue is proper in this district pursuant to Section 502(e)(2) because the ERISA plan at issue is administered in this district, the Defendants reside or may be found in this district, and the wrongful denial of benefits occurred in this district.

5.    Venue is also proper under 28 U.S.C. § 1391(b).

## THE PARTIES

6.    The Plaintiff is a resident of the State and County of New York.

7.    The Patient was a resident of New York during the time of the treatments at issue.

8.    Defendant Oxford is a New York corporation that contracts for the provision of health benefits in New York.

9.    Defendant UHSI is a Minnesota corporation that does business in New York, including administering Oxford medical insurance benefits in New York and participating in decision-making concerning medical benefits.

10.    Defendant United is a Delaware corporation that is the parent corporation of Oxford and UHSI. United establishes corporate policies and participates in the underwriting and administration of medical benefits for Oxford and other affiliated subsidiaries offering medical benefits nationwide.

11.    Plaintiff is a covered participant, also referred to as a Subscriber, in a group employee health benefits plan known as the Oxford Freedom Plan (the "Oxford Plan") purchased by his employer from Oxford.

12.    The Patient is a covered beneficiary, also referred to as a Covered Dependent, under the Oxford Plan.

## APPROPRIATENESS OF CLASS ACTION

13.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class (the "Class") consists of all persons covered by the Mental Health Rider issued by Defendants, who were denied benefits for hospitalization or other equivalent inpatient or residential care for mental illness, during the period from January 25, 2002 until the present (the "Class Period"). Excluded from the Class are Defendants, Defendants' officers, directors, heirs and assigns, and any entity in which Defendants hold a controlling interest.

14.     Plaintiff meets the prerequisites to bring this action on behalf of the Class.

15.     <u>Numerosity.</u>  Although the precise number of Class members is unknown to Plaintiff at this time and may only be ascertained through discovery from Defendants, who exclusively control this information, Plaintiff believes that the Class likely consists of hundreds of individuals, and thus joinder of all Class members is impracticable.  Class members may be identified by reference to Defendants' records and notified of this action by mail.

16.     <u>Commonality.</u>  There are questions of law and fact common to the Class such as: (a) whether Defendants engaged in a common practice of wrongfully denying benefits for hospitalization or equivalent inpatient or residential treatment for mental illness in clear violation of the terms of the Mental Health Rider issued by Defendants; and (b) whether the Mental Health Rider issued by Defendants provides benefits for out-of-network hospitalization or equivalent inpatient or residential treatment for mental illness.

17.    Typicality.  Plaintiff's claim is typical of the Class as all members of the Class are similarly affected by Defendants' wrongful denial of benefits for hospitalization or equivalent inpatient or residential treatment for mental illness in flagrant violation of the Mental Health Rider.

18.    Adequacy.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has no interests that are in conflict with the interests of the Class, and has retained competent counsel skilled and experienced in class actions and other complex litigation.

19.    Class certification is warranted under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Class would create a risk of: (i) inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and (ii) adjudications with respect to individual members of the Class which would as a practical matter substantially impair or impede the ability of those individual members to protect their interests.

20.    Class certification is further warranted under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

21.    Class certification is further warranted under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other methods for the adjudication of this controversy.

## FACTUAL ALLEGATIONS

### The Mental Health Rider

22.     The Patient suffered from mental illness, including severe eating disorders, the care and treatment of which have required medically-necessary, life-saving hospitalizations and equivalent inpatient and residential treatment.

23.     The Oxford Plan under which Patient is a covered beneficiary includes the Mental Health Rider. (A copy of the Mental Health Rider is attached hereto as Exhibit A.)

24.     Upon information and belief the Mental Health Rider is a standard rider issued by Defendants in exchange for an increased premium payment.

25.     The standard form health benefits plan issued by Defendants contains an exclusion regarding certain mental health services. The purpose of the Mental Health Rider is to remove this exclusion, as set forth in Section IV(b) of the Mental Health Rider ("The exclusion regarding mental health services is removed from the Certificate.").

26.     The Oxford Plan contains two certificates describing the benefits provided under the plan. The first certificate concerns in-network benefits and the second certificate concerns out-of-network benefits.

27.     The Mental Health Rider referred to herein is a rider to the certificate that governs the scope of out-of-network benefits. Thus, it removes the blanket exclusion for out-of-network mental health services and replaces that exclusion with the mental health coverage specified below.

28.     In relevant part, the Mental Health Rider states as follows:

We Cover Inpatient and *Equivalent Care* for the treatment of mental or nervous disorders. We define "Inpatient Care" to mean

treatment provided in a hospital as defined below. **_"Equivalent Care" is provided in a setting, other than such hospital, that We and the Provider deem to be safe and medically appropriate_**...Inpatient and Equivalent Care mental health services are Covered only when obtained from facilities licensed by the appropriate state regulatory authority as well as any other Provider We deem appropriate to provide the Medically Necessary level of care.

Mental Health Rider (I)(1)(a) (emphasis added).

29.     According to the Mental Health Rider, "[a]ll covered Services under this Rider are subject to UCR, Deductible and the Coinsurance shown in your Summary of Benefits." The acronym UCR refers to the "usual, customary and reasonable" rates for services and procedures. UCR is the reimbursement rate that applies to providers that are **_outside_** of the Oxford network.

30.     The fact that the Mental Health Rider modifies the out-of-network coverage certificate, together with the definition of Equivalent Care in the Mental Health Rider and the reference to UCR, make plain that the Mental Health Rider extends benefits to out-of-network facilities providing inpatient and residential care for mental illness.

31.     Indeed, when Defendants wished to restrict benefits to in-network providers, Defendants consistently used very specific wording to that effect. For example, a different form of mental health rider also used by Defendants provides coverage for inpatient mental health services "only when obtained from Our Network Providers which are hospitals as defined by subdivision ten of section 1.03 of the mental hygiene law..." There is no such language limiting coverage to in-network providers contained in the Mental Health Rider that is the subject of this Complaint. Thus, out-of-network mental health benefits are provided.

32.    Further, the definition of Equivalent Care in the Mental Health Rider indicates clearly that inpatient and residential treatments for mental illness are covered, including when such treatments are administered in a treatment facility that is not a hospital.

## The Denial of Benefits

33.    For a period of time during July and August 2006, the Patient received medically-necessary inpatient treatment for her mental illness at the Klarman Center at McLean Hospital in Massachusetts. McLean Hospital is a provider that is outside of the Oxford network.

34.    The Klarman Center at McLean Hospital is a residential treatment center intended for individuals whose symptoms are so severe that they cannot function at a less restrictive level of care.

35.    Before, during and after the Patient's treatment at McLean Hospital, the Plaintiff, on behalf of the Patient, sought to secure benefits under the Mental Health Rider for the Patient's course of treatment.

36.    The Plaintiff's application for benefits was denied by letter dated July 7, 2006. According to that letter, the basis for the denial was that ***"Resident[i]al mental health is not a covered benefit."*** (emphasis added).

37.    Internal decision logs provided by Defendants corroborate that the supposed basis for the denial was that "residential mental health" services were not a covered benefit. For example, relevant log entries state as follows:

    a.  July 7, 2006: "Residential mental health service is not a covered benefit."

b. July 7, 2006: "md from McLean called regarding benefits...Dr Steven
Tsao---Was advised that member with NY policy had no residential
coverage."

c. July 11, 2006: "father called was advised that both the facility and the md
had noted that this was residential level of care."

d. July 7, 2006 authorization report from Defendants' "Medical Director"
Satwant Ahluwalia states: "residential mental health is not covered
benefit...see plan description."

38.     This supposed ground for the denial of benefits altogether ignores the
Mental Health Rider, which plainly provides coverage for inpatient *and* residential
treatment – whether at a hospital or at an equivalent facility.

39.     Significantly, and misleadingly, the Summary of Benefits provided to the
Plaintiff with the handbook describing the Oxford Plan states that out-of-network
inpatient mental health treatments are not covered.  This summary description does not
accurately reflect the coverage provided by the Mental Health Rider.

40.     The Plaintiff appealed from this initial denial of benefits (the "Appeal").

41.     On September 21, 2006, Defendants denied the Appeal.  This time,
however, the supposed ground for denial was entirely different.

42.     According to the Medical Director who decided the appeal: "because per
the members NY certificate and members benefits package *inpatient mental health
coverage is only available from in-network providers*.  McLean Hospital is a non-
participating facility therefore services at McLean Hospital are denied as not a covered
benefit."  (grammatical errors in original) (emphasis added).

43.    This supposed ground for the denial of benefits is completely different from the earlier denial, which asserted wrongly that *residential* care was not covered.

44.    In addition to being inconsistent with the earlier ground for denial, this newly-manufactured ground for denial was equally inconsistent with the Mental Health Rider, which clearly provides coverage for out-of-network care.

45.    The Plaintiff then pursued a second-level appeal from the September 21, 2006 denial of benefits.

46.    On February 13, 2007, this second-level appeal was denied as well.

47.    According to Defendants' February 13, 2007 denial, authorization for residential treatment at the Klarman Center at McLean Hospital was denied because "out-of-network benefits are not covered under your Certificate of Coverage for Residential Mental Health."

48.    As already set forth above, this denial does not comport with the express terms of the Mental Health Rider, which clearly provides coverage for out-of-network mental health benefits.  Further, it is inconsistent with the first purported basis for denying coverage articulated by Defendants in July 2006.

49.    A couple of years before her extended treatment at McLean Hospital, during May and June of 2004, the Patient was also medically required to be treated for her eating disorder illness at a residential mental health facility known as The Renfrew Center in Philadelphia, Pennsylvania.

50.    As with the McLean Hospital, Plaintiff timely submitted claims for coverage of the fees for the Renfrew Center.

51.    Those claims were wrongly denied by Oxford on the erroneous ground that residential treatment for mental health services was not covered under the Policy.

52.    Plaintiff requested from Oxford a referral to an in-network facility that provides the course of treatment for severe eating disorders offered by the Renfrew Center. None was proffered. The fact that there was no suitable in-network facility was acknowledged by representatives of Defendants in communications with Plaintiff. Despite Plaintiff's efforts, Defendants refused to enter into an *ad hoc* agreement with the Renfrew Center, as is customary in such situations.

53.    As with the McLean Hospital denial, the Renfrew Center denial was flatly inconsistent with the terms of the Mental Health Rider.

54.    Plaintiff has exhausted all available administrative remedies.

55.    Upon information and belief, the "Summary of Benefits" information supplied by Defendants to plan beneficiaries who are members of the proposed Class routinely failed to inform beneficiaries of the true scope of benefits provided under the Mental Health Rider.

56.    Upon information and belief, it was Defendants' uniform practice to wrongfully deny coverage for out-of-network inpatient mental health treatment to beneficiaries covered by the Mental Health Rider. In doing so, Defendants acted in utter disregard of the Mental Health Rider and failed to provide benefits that they were obligated to provide.

## COUNT ONE

## VIOLATION OF ERISA § 502(a)(1)(B)

57.    Plaintiff hereby realleges and reincorporates the allegations set forth in paragraphs 1 through 56 above.

58.    Section 502(a)(1)(B) provides that a beneficiary may bring a civil action to recover benefits due under the plan, to enforce rights under the plan and to clarify rights to future benefits under the plan.

59.    Defendants breached their obligations under ERISA by wrongfully denying Plaintiff's claim for benefits to which he was entitled under the Mental Health Rider.

60.    Defendants' denial of benefits in flagrant disregard of the Mental Health Rider was arbitrary and capricious.

61.    Defendants' wrongful conduct and violations of ERISA have damaged Plaintiff in an amount in excess of $100,000 to be determined at trial.

62.    Upon information and belief, members of the Proposed Class have similarly been denied claims as a result of Defendants' practice of denying benefits for inpatient out-of-network treatments for mental illness, notwithstanding the terms of the Mental Health Rider.

63.    Accordingly, members of the proposed Class have been damaged as a result of Defendants' practice of wrongfully denying claims for inpatient out-of-network treatments for mental illness.

## JURY TRIAL DEMANDED

64.    Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court enter judgment against Defendants as follows:

(a)      awarding Plaintiff, and all others similarly situated, damages suffered as a result of Defendants' wrongful conduct herein;

(b)      declaring the scope of coverage provided under the Mental Health Rider for inpatient mental health treatment or equivalent care, and declaring the scope of out-of-network mental health benefits;

(c)      enjoining Defendants from future denials of claims that are properly covered under the Mental Health Rider;

(d)      requiring Defendants to ensure that the Summary of Benefits provided to subscribers accurately reflects the mental health coverage provided under the medical benefits plan, and otherwise requiring Defendants to clearly and accurately disclose the scope of mental health benefits provided under the plan;

(e)      awarding attorneys' fees in accordance with Section 502(g) of ERISA; and

(f)      awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
         January 25, 2008

                              Respectfully submitted,

                              MORGENSTERN FISHER & BLUE, LLC

                              Peter D. Morgenstern
                              Eric B. Fisher
                              885 Third Avenue
                              New York, New York 10022
                              Telephone: 212.750.6776
                              Facsimile: 646.349.2816

# Exhibit A

 Oxford Health Plans

# Oxford Health Insurance, Inc.

## Mental Health and Substance Abuse Rider

Your supplemental Certificate of Coverage & Member Handbook ("Certificate") is revised as follows:

**I.  Coverage**

**1.  Mental Health Services**

**a.  Inpatient**

We Cover Inpatient and Equivalent Care for the treatment of mental or nervous disorders. We define "Inpatient Care" to mean treatment provided in a hospital as defined below. "Equivalent Care" is provided in a setting, other than such hospital, that We and the Provider deem to be safe and medically appropriate.

We reserve the right to provide this benefit in the modality We determine to be both medically appropriate and the most cost effective.

Inpatient and Equivalent Care mental health services are Covered only when obtained from facilities licensed by the appropriate state regulatory authority as well as any other Provider We deem appropriate to provide the Medically Necessary level of care. Alcoholism and substance abuse related rehabilitation are not considered mental health services under this provision.

For Inpatient and Equivalent care, We cover up to the amount of days shown in your Summary of Benefits.

**b.  Outpatient**

We cover outpatient visits for the treatment of mental or nervous disorders. A "visit" for the purposes of this provision is 45 to 60 minutes of therapy.

Outpatient mental health services are Covered only when obtained from duly licensed: psychiatrists or practicing psychologists; or by certified social workers or mental hygiene facilities. Alcoholism and substance abuse related rehabilitation are not considered mental health services under this provision.

We Cover up to the amount of visits shown in your Summary of Benefits.

**Alcoholism and Substance Abuse**

**a. Detoxification**

Inpatient detoxification is Covered up to the amount of days and admissions shown in your Summary of Benefits.

**b. Inpatient Services**

Treatment in a Plan Specialized Rehabilitation Facility will be Covered, in accordance with an individual treatment plan prepared by your Provider. Coverage is limited to the amount of days shown in your Summary of Benefits.

**II.  Precertification**

All treatment received under this Rider must be precertified and described in Section I. Of your Certificate.

**III.  Coinsurance and Benefit Limitations**

All covered Services under this Rider are subject to UCR, Deductible and the Coinsurance shown in your Summary of Benefits.

**IV.  Miscellaneous Provisions**

All benefits are on a per Member, per calendar year basis.

The "Exclusions and Limitations," section of your Certificate is amended as follows:

a.  The exclusion regarding inpatient alcohol and substance abuse treatment and detoxification is removed from the Certificate.

b.  The exclusion regarding mental health services is removed from the Certificate.

This Rider supersedes any amendment or rider providing coverage for Mental Health and Substance Abuse previously issued by Us. In the event of a conflict between the provisions of this Rider and the Certificate, the provisions of this Rider will prevail. All other terms and conditions of the Certificate remain in full force and effect.

Nothing contained in this Rider will be held to vary, alter, waive, or extend any of the terms, conditions, provisions or limitations of the Agreement to which this Rider is attached, other than as specifically stated herein.