UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ANONYMOUS OXFORD HEALTH PLAN :
MEMBER WITH ID #6023604*01, on behalf
of himself and all others similarly situated, :

   Plaintiff, :

            08 Civ. 943 (PAC)

 -against- :

            OPINION & ORDER

OXFORD HEALTH PLANS (NY), INC., a :
New York Corporation, UNITED
HEALTHCARE SERVICES, INC., a :
Minnesota Corporation, and UNITED
HEALTHCARE, INC., a Delaware :
Corporation,
            :
   Defendants.
            :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff, an anonymous employee of the law firm of Entwistle & Cappucci, LLP, sues Defendants Oxford Health Plans (NY), Inc. ("Oxford"), United HealthCare Services, Inc. ("UHSI"), and United HealthCare Inc. ("UHI"), to recover benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B). Plaintiff brings this case as a class action, suing on behalf of himself and all others who were wrongfully denied benefits for hospitalization for mental illness. Defendants move to dismiss the Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Defendants' motion to dismiss the Complaint is GRANTED.

1

**BACKGROUND**[1]

Plaintiff's daughter was covered under her father's health insurance plan, issued by Oxford. The daughter received inpatient treatment on two separate occasions for an eating disorder at what Plaintiff calls a "residential" treatment facility. The first occasion was in May and June of 2004 at The Renfrew Center in Philadelphia. The second occasion was in July and August of 2006 at the Klarman Center at McLean Hospital in Massachusetts. Both treatment centers are not "in-network" institutions under Plaintiff's health plan. On both occasions Oxford denied coverage for the Plaintiff's health expenses.[2]

In denying the claim for the 2006 treatment, Oxford sent Plaintiff a letter stating that the basis for the denial was that "Resident[i]al mental health is not a covered benefit." (See Complaint ("Compl.") ¶ 36.) On appeal, the Medical Director denied the claim because "inpatient mental health coverage is only available from in-network providers" and McLean Hospital was not in-network. (Id. ¶ 42.) Oxford's reasons for denying the claim for the 2003 treatment were substantially similar. (Id. ¶ 51.) Plaintiff alleges that Oxford wrongfully denied his claims in both cases. In the alternative, Plaintiff argues that the Oxford health plan contained ambiguities that should be construed against Oxford, the drafter of the plan.

**I. Plaintiff's Health Plan**

Each year, Oxford issued Plaintiff a Certificate of Coverage (the "Certificate"), which details the plan's coverage. Each Certificate contains an integration clause, identifying all the

---

[1] The Court derives the facts in this section from Plaintiff's Complaint, except where otherwise noted. For the purposes of a motion to dismiss, the Court accepts the factual allegations in the complaint as true. Overton v. Todman & Co., 478 F.3d 479, 483 (2d Cir. 2007).

[2] Plaintiff alleges that in conjunction with the 2004 treatment he requested a referral from Oxford to an in-network facility but "[n]one was proffered." Plaintiff also alleges that Defendants' representatives acknowledged that there was no suitable in-network facility to treat severe eating disorders with the same scope of service as the Renfrew Center. (See Complaint ("Compl.") ¶ 52.)

documents that make up the agreement between Plaintiff's employer and Oxford.  As an example, the integration clause in the 2003 Certificate says:

> 1. Entire Agreement.  This Certificate, the HMO Certificate, the Freedom Plan Summary of Benefits, any Certificate riders issued to and accepted by the Group, the Group Enrollment Agreements, and the individual applications of you and your Covered Dependents, if any, constitute the entire contract between the parties.

(See Declaration of Rodney Lippold ("Lippold Decl.") Ex. F at 2003 Cert 092.)  The Court finds that the integration clause requires that the plan documents be read together, not separately, to understand the nature of the coverage.[3]

### a. The 2003 Certificate

The 2003 Certificate was in effect when the Plaintiff's daughter received treatment at the Renfrew Center in 2004.  The 2003 Certificate instructs participants to "check your Summary of Benefits" to see if mental health services were added through a rider. (See Id. Ex. F at 2003 Cert 034.)  The 2003 Certificate also states that any changes to coverage "will be made by rider." (Id. at 2003 Cert 042.)

The 2003 Certificate has a rider titled "Mental Health and Substance Abuse Rider." ("2003 Rider") (Id. at 2003 Cert 097.)  This single rider contains a section on coverage for mental health services for both inpatient and outpatient care.  Under the "Inpatient" section, the rider states that:

> We Cover Inpatient and Equivalent Care for the treatment of mental or nervous disorders.  We define "Inpatient Care" to mean treatment provided in a hospital as defined below.  "Equivalent Care" is provided in

---

[3] Plaintiff argues that the Court should not look at documents beyond the Complaint and a rider to the 2003 Certificate, which Plaintiff submitted as an attachment to the Complaint.  This argument is easily dismissed, as the Court may consider documents outside of the complaint "upon which the complaint relies and which are integral to the complaint." See Subaru Dist. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).  To allow otherwise would permit the Plaintiff to improperly manipulate the Complaint, attaching only the segments of the Certificate that support its position while ignoring other relevant parts.  Here, the Court must review the entire Certificate to understand the nature of the health coverage.

> a setting, other than such hospital, that We and the Provider deem to be
> safe and medically appropriate.
> . . .
> Inpatient and Equivalent Care mental health services are Covered only
> when obtained from facilities licensed by the appropriate state regulatory
> authority as well as any other Provider We deem appropriate to provide
> the Medically Necessary level of care.  Alcoholism and substance abuse
> related rehabilitation are not considered mental health services under this
> provision.
>
> For Inpatient and Equivalent care, We cover up to the amount of days
> <u>shown in your Summary of Benefits</u>.

Id. (emphasis added).

The 2003 Rider also states that "b. The exclusion regarding mental health services is removed from the Certificate." (Id.)  The rider also states that "All covered Services under this Rider are subject to UCR, Deductible and the Coinsurance shown in your Summary of Benefits." (Id.)  Finally, the rider states that:

> This Rider supersedes any amendment or rider providing coverage for
> Mental Health and Substance Abuse previously issued by Us.  In the event
> of a conflict between the provisions of this Rider and the Certificate, the
> provisions of this Rider will prevail.  All other terms and conditions of the
> Certificate remain in full force and effect.

Id.

The 2003 Rider references the Summary of Benefits.  The Summary of Benefits in the 2003 Certificate states that it does not provide coverage for out-of-network inpatient mental health service. (Id. at 2003 Cert 010.)  In grid form, the Summary of Benefits shows that out-of-network inpatient mental health services are "COVERED IN-NETWORK ONLY." (Id.) (capitalization in original.)[4]

---

[4] In addition to the 2003 Certificate and rider, Defendants provided the Court with the 2006 Certificate and riders, which were in effect when Plaintiff's daughter received her second round of medical attention.  The 2006 Certificate and riders contain substantially similar language to their 2003 counterparts. (See, generally, Lippold Decl. Ex. L.)  The significant difference in the 2006 Certificate is that it contains two distinct riders, one specifically covering "Out-of-Network Coverage" for mental health and substance abuse, the other covering "In-Network

4

## II. Procedural History

Plaintiff filed this Complaint on January 29, 2008. Defendants filed their motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on April 14, 2008. The Court held oral arguments on the motion on February 5, 2009.

## DISCUSSION

### I. Standard of Review on Motion to Dismiss

On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive dismissal, a complaint must plead enough facts to be plausible on its face. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court may dismiss a claim where it "appears beyond doubt" that the plaintiff can prove no facts that would entitle him to relief. Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted). Although "the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

### II. Review of Language in ERISA Plans

Federal courts construe the meaning of ERISA plans according to federal common law. Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002). Courts review benefit language in

---

Coverage." (Id. at 2006 Cert 062, 063.) Notably, the 2006 out-of-network rider does not have any provision for inpatient service, while the in-network rider has separate headings and provisions for both inpatient and outpatient coverage.

Plaintiff argues that the Court should not consider the 2006 Rider. Throughout his Complaint and his motion papers Plaintiff refers only to the language of the 2003 Rider because he claims that there are disputed facts about whether the 2006 Rider was in effect. Plaintiff claims that "[d]iscovery will show that Plaintiff was never notified of any such change to the Plan" (see Plaintiff's Memorandum of Law ("Pl. Mem.") at 7), although Plaintiff never alleges this in his Complaint. Without agreeing with Plaintiff's argument that the 2006 Rider is not applicable, the Court will, at this early stage in the proceeding, take the Plaintiff at his allegation and only consider the 2003 Rider and Certificate. On the assumption that Plaintiff never received the 2006 Rider, the 2003 plan would govern and be dispositive of the claim here.

5

an ERISA plan by looking at the plan as a whole and construing the relevant terms in their plain meanings. See Critchlow v. First Unum Life Ins. Co., 378 F.3d 246, 256 (2d Cir. 2004) ("We interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience.") (quotation and citation omitted); Fay, 287 F.3d at 104 ("This Court will review the Plan as a whole, giving terms their plain meanings.").

Where a court finds ambiguities in the language of an ERISA plan, the court should construe the ambiguities against the insurer. See Critchlow, 378 F.3d at 256; Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999). This approach is particularly relevant where an exclusionary clause contains the ambiguity. See Masella v. Blue Cross & Blue Shield, 936 F.2d 98, 107 (2d Cir. 1991). Language in an ERISA plan is ambiguous "when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc., 37 F.3d 55, 59 (2d Cir. 1994) (quoting Care Travel Co. v. Pan Am. World Airways, 944 F.2d 983, 988 (2d Cir. 1991)); see also Critchlow, 378 F.3d at 256.

**III. Application to the Facts**

Plaintiff argues that the 2003 Rider modified the Certificate to allow coverage for out-of-network inpatient mental health services. Plaintiff points to the language in the 2003 Rider stating that "b. The exclusion regarding mental health services is removed from this Certificate." (See Lippold Decl. Ex. F at 2003 Cert 097; Compl. ¶ 25.) Plaintiff also points to the language under "Inpatient" coverage in the 2003 Rider stating that "Equivalent Care" is covered and that "'Equivalent Care' is provided in a setting, other than such hospital, that We and the Provider deem to be safe and medically appropriate . . . ." (Lippold Decl. at Ex. F at 2003 Cert 097;

Compl. ¶ 28.)  Plaintiff argues that "Equivalent Care" as defined in the 2003 Rider means inpatient treatment for mental illness at facilities that are not hospitals, such as the Renfrew Center.

Plaintiff's reading of the 2003 Rider fails to explain Plaintiff's conclusion that Oxford will cover mental health services at <u>out-of-network</u> facilities.  To make that leap, Plaintiff points to language in the Rider stating that "All covered Services under the Rider are subject to UCR, Deductible and the Coinsurance shown in your Summary of Benefits." (Lippold Decl. at Ex. F at 2003 Cert 097.)  Plaintiff argues that "UCR" refers to "usual, customary and reasonable" rates, and then alleges that "UCR is the reimbursement rate that applies to providers that are <u>outside</u> of the Oxford network." (<u>See</u> Compl. ¶ 29 (emphasis in original).)  Bundling the language and the inferences together, Plaintiff argues, the Rider's provision for coverage of "Equivalent Care" applies to instances where the treatment facility is outside of the Oxford Network.

This strained reading of the Rider makes little sense and conveniently ignores the unwelcome provisions of the Certificate referenced in the Rider.  The 2003 Rider states that "For Inpatient and Equivalent care, we cover up to the amount of days shown in your Summary of Benefits." (<u>See</u> Lippold Decl. Ex. F at 2003 Cert 097.)  A plan participant must look at the Summary of Benefits to understand the scope of coverage.  In the 2003 Summary of Benefits, in-network inpatient mental health services is listed as covered at "No Charge," while out-of-network inpatient coverage is listed as "COVERED IN-NETWORK ONLY." (<u>Id.</u> at 2003 Cert 010.)  Three pages later the 2003 Summary of Benefits lists the number of days and visits covered for inpatient mental health services, with no reference to whether Oxford covers the visits only in-network or also out-of-network. (<u>Id.</u> at 2003 Cert 013.)

7

There is nothing ambiguous about the language in the 2003 Summary of Benefits or 2003 Rider. The Rider specifically directs plan participants to reference the Summary of Benefits to determine the scope of coverage. The Summary of Benefits states in all capital letters that Oxford covers mental health services in-network only. It is undisputed that the treatment centers visited by Plaintiff's daughter were outside of the Oxford network. In order to receive benefits, Plaintiff essentially reads the Summary of Benefits out of the Certificate. The language of the 2003 Rider cannot be twisted to provide for out-of-network coverage. If the plan is read as a whole and given its plain meaning, as this Court must, see Critchlow, 378 F.3d at 256, the plan unambiguously restricts inpatient coverage for mental health services to in-network facilities.[5]

Plaintiff argues that as a matter of ERISA law, Defendants cannot use the Summary of Benefits to limit the scope of Plaintiff's coverage and that formal plan language providing benefits trumps narrowing language in a Summary Plan Description. See Stern v. Cigna Group Ins., 06 Civ. 1400 (JSR) 2007 U.S. Dist. LEXIS 9153, at *11 (S.D.N.Y. Jan. 30, 2007), vacated and remanded on other grounds, No. 07-0772-cv, 2008 U.S. App. LEXIS 24017 (2d Cir. Nov. 20, 2008) ("[D]efendants are seeking to narrow the terms of the Policy by referring to the 2005 Summary Plan Description, and no Second Circuit case holds that a plan or fiduciary can invoke narrow or inconsistent [Summary Plan Description] language to preclude participants from exercising rights granted by formal plan texts.") (internal quotation and citation omitted). Based on this principle, Plaintiff asks the Court to give primacy to the Rider over any conflicting language within the Summary of Benefits.

---

[5]  Defendants additionally argue that Plaintiff failed to allege compliance with certain preconditions to coverage in the 2003 Rider. Specifically, the rider states that: "Inpatient and Equivalent Care mental health services are Covered only when obtained from facilities licensed by the appropriate state regulatory authority as well as any other Provider We deem appropriate to provide the Medically Necessary level of care." (See Lippold Decl. Ex. F at 2003 Cert 097.) As the Court has already determined that the 2003 health plan unambiguously does not cover Plaintiff's claims, there is no reason to address this issue.

8

Plaintiff's argument fails for two reasons. First, as previously discussed, the 2003 Rider and the Summary of Benefits are not in conflict. The Rider specifically instructs plan participants to consult the Summary of Benefits to determine coverage. There is no reason to give primacy to language in either document because the documents work as one to set out plan coverage. Second, Plaintiff confuses the plan's Summary of Benefits with a statutorily defined Summary Plan Description. See 29 U.S.C. § 1022(b).[6] The Summary of Benefits in Plaintiff's 2003 Oxford health plan is not a Summary Plan Description as such a plan is described at 29 U.S.C. § 1022(b), so Plaintiff's argument on this point fails. See Rubio v. Chock Full O'Nuts Corp., 254 F. Supp. 2d 413, 426 (S.D.N.Y. 2003) ("[T]he appropriate test for determining if a document constitutes [a Summary Plan Description] under ERISA is to see whether it contains all or substantially all categories of information required under 29 U.S.C. § 1022(b) and the

---

[6] 29 U.S.C. § 1022(b) states that:

> The summary plan description shall contain the following information: The name and type of administration of the plan; in the case of a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)]), whether a health insurance issuer (as defined in section 733(b)(2) [29 USCS § 1191b(b)(2)]) is responsible for the financing or administration (including payment of claims) of the plan and (if so) the name and address of such issuer; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this Act and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)]), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this Act [29 USCS § 1133]), and if the employer so elects for purposes of complying with section 701(f)(3)(B)(i) [29 USCS § 1181(f)(3)(B)(i)], the model notice applicable to the State in which the participants and beneficiaries reside.

Department of Labor's . . . regulations at 29 C.F.R. § 2520.102-3.") (internal quotation and citation omitted).

## CONCLUSION

The language in Plaintiff's 2003 health plan clearly precludes coverage for out-of-network, inpatient mental health services. Plaintiff's concern and care for his daughter are entirely commendable, but unfortunately the plan itself is unambiguous and it does not provide for out-of-network coverage. For the reasons previously discussed, Defendants' motion to dismiss is GRANTED and Plaintiff's Complaint is DISMISSED. The Clerk of the Court is directed to terminate this matter.

Dated: New York, New York
       March 16, 2009

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge